**ALAMOANA S. MULITAUAOPELE, Petitioner**

**v.**

**CHIEF ELECTION OFFICER, MALEPEAI SETU, and BOARD OF REGISTRATION, Respondents**

High Court of American Samoa
Appellate Division

AP No. 20-94

December 5, 1994

Before KRUSE, Chief Justice, RICHMOND, Associate Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel:        For Petitioner, Asaua Fuimaono
For Respondents Chief Election Officer and Board of Registration, Malaetasi M. Togafau, Attorney General, and Elvis R.P. Patea, Assistant Attorney General
For Respondent Malepeai Setu, Charles V. Ala`ilima

Order Denying Petition for a New Election:

## HISTORY

On November 8, 1994, respondent Malepeai Setu ("Malepeai") received more votes than petitioner Alamoana Mulitauaopele ("Alamoana"), in the election to represent District No. 5 in the American Samoa House of Representatives.

Prior to the election, Alamoana registered an objection, dated November 6, 1994, with respondent Chief Election Officer ("CEO"), challenging the qualifications of 19 individuals listed in the official roll of registered voters for District No. 5. On November 12, 1994, the CEO responded to Alamoana's objection by allowing 12 of the 19 challenged votes to be counted. The other seven challenged voters either did not vote or were declared ineligible and not counted. As to the 12 votes allowed, Alamoana maintained his objection to six voters in his appeal of the CEO's decision to respondent Board of Registration ("Board"), dated November 13, 1994. On November 14, 1994, the Board affirmed the CEO's decision pertaining to the six challenged voters and allowed all six votes to count.

57

The following day Alamoana petitioned this Court, pursuant to A.S.C.A. § 6.0902, naming the CEO, the Board, and Malepeai as respondents, claiming that the six challenged votes were improper. Additionally, Alamoana raised objections to four other votes because of issues arising on election day, and requested a new election. This Court has jurisdiction over this action under A.S.C.A. § 3.0208(c). The Court heard this matter on November 23 and 25, 1994, with all parties and their counsel present.

## DISCUSSION

During the hearing, Alamoana withdrew his objections to the electoral qualifications of two challenged voters, leaving a total of eight challenged votes for our consideration. Further, the parties ultimately stipulated that the final vote count was 224 votes for Malepeai and 221 votes for Alamoana, subject to our decision regarding the eight remaining challenges. We will first consider the issues arising on election day concerning four votes, and then the four remaining challenges involving elector qualifications.

*I. Issues Arising on Election Day*

A. <u>Presentation of Identification</u>

■ Tia Tanoa, the pulenu`u of Faga`itua, a village in District No. 5, voted on election day without presenting any identification. Alamoana's poll watcher objected. A.S.C.A. § 6.0706 states in relevant part that "[e]very person shall provide identification if so required by a district official." This language requires presentation of identification only upon request of a district official. If the district official is satisfied as to the voter's identity, the elector may vote without formal identification. This vote shall remain counted.

B. <u>Irregularly Marked Ballots</u>

Four irregularly marked ballots, three disallowed and one allowed by district election officials, are at issue. Alamoana has contested three of these ballots. Two ballots selecting Alamoana were invalidated because the voter's mark extended outside the appropriate box. The third ballot, cast for Malepeai, was marked inside the appropriate box, but Malepeai's name was written by the voter at the bottom of the ballot. Unlike the first two ballots, this vote for Malepeai was counted. The fourth ballot, which entered into evidence by the CEO, selected Malepeai by marking within

the appropriate box and placing a line underneath that box. This ballot was also invalidated.

■■■ The Legislature has not enacted any statute, and the CEO has not promulgated any administrative rule, requiring voters to mark their ballots in any particular manner. All four voters' intentions were absolutely clear from the markings on their ballots. Without specific laws or rules delimiting the proper way to mark a ballot, election officials can exercise unbridled discretion and, as they did here, effect arbitrary and inconsistent results. In the absence of prescribed marking standards, election officials cannot properly invalidate a ballot for peculiar markings when the voter's intention is unambiguously expressed. We find that the three disqualified ballots, two for Alamoana and one for Malepeai must be counted, which brings the running total to 225 votes for Malepeai to 223 votes for Alamoana.

## II.  Voter Qualification Challenges

We now consider Alamoana's four remaining elector qualification challenges. All four of these challenged votes are reflected in the present vote count. Since we do not know the four electors' choice of candidate, the election result will become uncertain if two or more of these challenges are sustained. We consider each of these challenges individually.

### A.  Naumati A. Felise

In 1994, Naumati A. Felise voted in person in District No. 5, as she had done in every regular election from 1980 to 1986. She voted by absentee ballot in 1988 and 1992, and did not vote in 1990. She was raised in Fagaitua, where her mother was born, and has matai obligations there. She continued to live in Fagaitua after marriage and currently resides there.

■ A.S.C.A. § 6.0212(a) provides that "[t]he residency of a person is that place in which his habitation is fixed, and to which, whenever he is absent, he has the intention to return." Felise's permanent residency in Fagaitua was well established and was never lost by her presence in California at election time in 1988, 1990 and 1992. On the evidence before us, we find that Felise continuously intended to return to Fagaitua while she was outside the territory. Her vote counts.

### B.    Potumoe S. Sotoa

In 1994, Potumoe S. Sotoa voted in person in District No. 5. He voted by absentee ballot in every election from 1984 to 1990, but did not vote in 1992. Sotoa was raised in Fagaitua, his mother's birthplace, and performs matai services in this village. He was outside the territory for an extended period due to his service in the U.S. Navy. He was also recently seen at a funeral in San Diego. He returned to American Samoa in June 1994 and presently lives in his parents' home, now located in Faga`alu village, outside District No. 5.

■■■ Sotoa's absence from the territory in the military service of the United States does not affect his residency. Under A.S.C.A. § 6.0212(e), "A person does not gain or lose residency by reason of his presence of absence while employed in the service of the United States . . . ." His attendance at an outside funeral and immediate choice of living arrangements do not overcome his longstanding, permanent ties to Fagaitua. He is a qualified elector in Fagaitua, and his vote will stand.

C.      Daniel Stark

Daniel Stark, age 18 years, is a first-time voter, registered in District No. 5. He is from a broken home and has been living with a family in Faga`itua for the past three years. He graduated from Faga`itua High School in June 1994. Presently, he is helping his remarried father construct a house in Malaeimi, a village outside of District No. 5.

A.S.C.A. § 6.0212(a) also governs Stark's situation. We find that Stark established permanent ties to Faga`itua and intends to return there when his father's house is completed. His vote shall remain counted.

D. Tui Fata, Jr.

Tui Fata, Jr., also age 18 years, is another first-time voter, registered in District No. 5. He has lived with Malepeai in Ili`ili, a village outside of District No. 5, for the last three years, because of his matai obligations to Malepeai and not because of permanent intent to remain there. Malepeai, whose residency status is not at issue, is also registered in District No. 5 and is a Faga`itua matai.

■ A.S.C.A. § 6.0212(f) states:

> The situs of a person's primary matai obligations are a factor in
> determining district residency. However, matai obligations alone
> may not sustain a finding of district residency absent other

evidence which, in connection with evidence of matai obligations, is sufficient to sustain the intent of this section.

Fata was raised in Faga`itua, his father's birthplace, and his parents own a home there. With these additional factors, we find that Fata is a qualified elector in Faga`itua. His vote counts.

## CONCLUSION

With respect to issues arising on election day, we allow three previously uncounted votes to be counted, leaving Malepeai with a two-vote winning margin. Since we affirm the decision of the CEO and the Board and conclude that all four challenged voters are qualified electors of District No. 5, their votes remain effective. Thus, the final vote count stays at 225 votes for Malepeai to 223 votes for Alamoana. The result in District No. 5 is therefore certain in Malepeai's favor. The petition is denied.

A copy of the judgment entered in this matter shall be served upon the CEO with the instruction that he certify the result of the election in District No. 5.

It is so ordered.